J-A08034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PAMELA MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARTHUR B. KEMPEL, JR., UKNOWN | : | No. 808 WDA 2021 |
| HEIRS AND ASSIGNS OF ARTHUR B. | : | |
| KEMPEL, JR., AND JOHN M. | : | |
| CUNNINGHAM, UKNOWN HEIRS AND | : | |
| ASSIGNS OF JOHN M. CUNNINGHAM, | : | |
| KEVIN G. DIEHM, PENELOPE S. | : | |
| DIEHM, CHRISTOPHER A. | : | |
| CRAWFORD, PAMELA CRAWFORD, | : | |
| CHRISTOPHER R. WOLF, JUSTIN M. | : | |
| WAGNER, EAST BRADY BOROUGH, | : | |
| ANTHONY E. TRUELOVE | : | |

Appeal from the Order Entered June 11, 2021
In the Court of Common Pleas of Clarion County Civil Division at No(s):
1225 C.D. 2019

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED: APRIL 19, 2022**

Pamela Moore (Appellant) appeals from the order entered in the Clarion County Court of Common Pleas sustaining the preliminary objection filed by defendants Kevin G. Diehm, Penelope S. Diehm, Christopher A. Crawford, Pamela Crawford, Christopher R. Wolf, and Justin M. Wagner (collectively Appellees), and dismissing with prejudice Appellant's second amended complaint in this action seeking to quiet title to an abandoned railroad

easement right-of-way.[1]  On appeal, Appellant contends the trial court erred in:  (1) striking a prior default judgment entered in this matter when Appellees lacked standing to object; (2) denying Appellant's preliminary objection to Appellees' preliminary objection on the issue of standing without permitting discovery; (3) sustaining Appellees' preliminary objection, and dismissing Appellant's second amended complaint with prejudice, based upon Appellant's purported failure to state a claim; and (4) issuing an order requiring Appellant's counsel to serve all pleadings *via* certified mail to Appellees' counsel, following an *ex parte* communication with Appellees' counsel.  For the reasons below, we affirm.

### A.  Facts & Procedural History

At issue in this matter is a vacant parcel of land located in East Brady Borough, Clarion County, Pennsylvania.  The parcel — approximately 33 feet wide and 210 feet long — is the southern half of a 66-foot-wide abandoned railroad right-of-way.  It is well-settled that "[w]hen a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way."  ***Dellach v. DeNinno***, 862 A.2d 117, 118 (Pa. Super. 2004).

---

[1] The remaining named defendants — Arthur B. Kempel, Jr., Unknown Heirs and Assigns of Arthur B. Kempel, Jr., John M. Cunningham, Unknown Heirs and Assigns of John M. Cunningham, East Brady Borough, and Anthony E. Truelove — did not join in the preliminary objection or file an appellee brief in this matter.  We note, however, Tyler S. Heller, Esq., entered his appearance as counsel of record for East Brady Borough both in the trial court and before this Court, and appeared below at a March 8, 2021, hearing.

On November 4, 2019, Appellant filed a civil action to quiet title to the 33-foot parcel as "an adjacent land owner[.]" **See** Appellant's Complaint, 11/4/19, at 3-4. Appellant owns property north of the 66-foot right-of-way, and her predecessors in title acquired the northern 33-foot half of the right-of-way. In her complaint, Appellant named as defendants "the unknown owner or owners of that certain tract of land being described as that certain vacant parcel of land situate in East Brady Borough, Clarion County, Pa." **Id.** at 3 (some capitalization omitted). She attached to her complaint a map of the pertinent area,[2] which showed Appellant owned land north and west of the abandoned railroad right- of-way, and other persons — including Appellees — owned land south of the right-of-way. **See id.**, Exhibit. The map also showed that there was an 20-foot strip of land, described in the relevant deeds as "Railroad Street," situated between Appellees' properties and the railroad right-of-way. **See id.** However, the map indicated Appellees' properties extended over "Railroad Street" to the railroad right-of-way. It is unclear from the record whether "Railroad Street" was ever accepted by East Brady Borough, or remained a "paper street."[3]

_____

[2] In a subsequent filing, Appellant referred to this map as "a tax map generated by the Clarion County Assessment Office[.]" Appellant's Answer to Petition to Strike Default Judgment, 7/20/20, at 3.

[3] A "paper street" is "[a] thoroughfare that appears on plats, subdivision maps, and other publicly filed documents, but that had not been completed or opened for public use." Black's Law Dictionary, "Street" (11th ed. 2019).

Concomitant with her complaint, Appellant filed a motion for service of process by publication. *See* Appellant's Motion for Service of Process by Publication, 11/4/19, at 2-3. We note, however, that Appellant did not attach to her motion an affidavit — "stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made" — as required by Pennsylvania Rule of Civil Procedure 430(a). *See* Pa.R.C.P. 430(a). Nevertheless, on November 7, 2019, the trial court, then-President Judge James G. Arner,[4] entered an order permitting service of process by publication. *See* Order, 11/7/19.[5]

On January 2, 2020, Appellant filed a motion for default judgment, having received no response to the publication of her action. The trial court entered a default judgment in favor of Appellant on January 8th. *See* Order, 1/8/20.

Thereafter, on June 29, 2020, Appellees filed both a praecipe for *lis pendens* and petition to strike the default judgment. They asserted Appellant's motion for service by publication did not comply with the requirements of Rule 430, because it did not include the requisite affidavit from Appellant's counsel, and the publication notice was "insufficiently specific to put [Appellees] on notice of her claim." Appellees' Petition to Strike Default

---

[4] Judge Arner became a Senior Judge in January of 2020.

[5] We note that although the order was dated November 6, 2019, it was not docketed until November 7, 2019. We will use the docket filing date as the date of the orders referenced in this decision.

- 4 -

Judgment, 6/29/20, at 4. Appellant filed an answer to the motion to strike averring, *inter alia*, that Appellees' properties do not adjoin the railroad right of way, and, thus, she was not required to name them as defendants. **See** Appellant's Answer to Petition to Strike Default Judgment at 6. In support of her claim, Appellant attached a statement by registered professional land surveyor, Tyler Landon Truitt, who concluded, "[b]ased on the physical boundary monuments found in the field along with the adjoiner calls in the deeds, I believe there to be a strip of land between the railroad right-of-way and [Appellees'] parcels . . . that is called out in the deeds as Railroad Street." **See id.** at Exhibit A.

The trial court conducted a hearing on September 23, 2020. Appellant reiterated her claim that Appellees lacked standing to challenge the quiet title action because they "do not have an adjoining ownership with [the] abandoned railroad right of way." N.T., 9/23/20, at 3. However, Appellees argued that, based upon the map Appellant attached to her complaint and the deeds to their properties, "there are issues as to whether or not [Appellees] own to the edge of that right-of-way." **Id.** at 5. Thus, they asserted that they should have been given notice of the proceeding, and their rights, if any, as property owners was a "decision for the court to make." **Id.** Regardless, Appellees maintained that the court should strike the judgment based upon a defect on the face of the record, namely, the published notice of the quiet title action was too general to put any potential adjoining property owners on notice of the action. **Id.** at 7, 9.

On September 25, 2020, the trial court entered an order granting Appellees' motion to strike the default judgment. *See* Order, 9/25/20. Specifically, the court found "several fatal defects" on the record, including Appellant's failure to: (1) state "any facts in support of her claim that she has a right, title or interest in the land" at issue; (2) submit an affidavit detailing the "investigation she made to determine the whereabout of the adjoining [property] owners and the reasons [why] service could not be made upon them pursuant to [Pa.R.C.P. 410;]" and (3) adequately describe the land at issue in the publication notice. *Id.* at 1-2. The court further directed:

> [Appellant] may file an Amended Complaint and make service in conformity with this Order. Since [Appellees] have claimed interests in the land they should be named as Defendants and service should be made on them pursuant to Rule 410, even if [Appellant] believes they do not have valid claims.

*Id.* at 3.

Appellant filed an amended complaint on November 2, 2020, naming the defendants listed above, including Appellees. Appellees filed preliminary objections on November 20th. A month later, on December 10th, Appellant filed a second amended complaint. This complaint listed ten counts — one for each defendant/alleged adjoining landowner. *See* Second Amended Complaint, 12/10/20, at 3-28. In each count, Appellant averred she owns two parcels of land along the abandoned railroad right-of-way, one "at the southwestern end" and the other "along the northwesterly line." *See id.* at 4, 7, 9, 12, 14, 17, 19, 21-22, 24, 26. Thus, she claimed ownership of the right-of-way as the "adjoining landowner" and averred that each of the named

defendants have "no right, title or interest in or to the property." *See id.* at 5, 7, 10, 13, 15, 18, 20, 22, 24, 27. Appellant attached to her second amended complaint a copy of her deed, and the deeds of her predecessors in title, as well as a survey map and legal description of the land provided by Truitt. *See id.* at Exhibit A, B. The survey map attached to this complaint designates that Appellees' properties end at Railroad Street, and do not extend to the right-of-way. *Id.* at Exhibit B.

On December 23, 2020, Appellees filed a preliminary objection to the second amended complaint. They asserted that Appellant failed to "aver a basis for any right, title, or interest" in the claimed parcel. Appellees' Preliminary Objection to Second Amended Complaint, 12/23/20, at 2. Rather, Appellees argued the survey map shows that Appellant "owns land north of the 66-foot-wide abandoned railroad right-of-way and has already acquired the 33-foot-wide north half of the right-of-way." *Id.* Thus, they averred Appellant had not shown "she owns land south of the abandoned right-of-way that would support her claim of a right, title, or interest" in the 33-foot parcel at issue. *Id.*

In response, Appellant filed a preliminary objection to Appellees' preliminary objection. She argued that Appellees lacked standing because their properties "do not adjoin or abut the . . . 33[-]foot[-]wide, abandoned railroad right-of-way." Appellant's Preliminary Objection to Appellees' Preliminary Objection of Appellant's Second Amended Complaint, 1/8/21, at 4

(emphasis omitted). Thus, she objected pursuant Pa.R.C.P. 1028(a)(5), "lack of capacity to sue[.]" *Id.*

On January 13, 2021, the trial court — now President Judge Sara J. Seidle-Patton[6] — directed Appellees to file a response to Appellant's preliminary objection and scheduled oral argument for March 8th. Appellees complied, and filed a response on January 19, 2021, asserting Appellant "confuses (i) a plaintiff's standing to sue with (ii) a defendant's right to object to a claim asserted against him or her." Appellees' Response to Appellant's Preliminary Objection to Appellees' Preliminary Objection of Appellant's Second Amended Complaint, 1/19/21, at 2.

Prior to the scheduled oral argument, on February 2nd, Appellant filed a "Motion for Relief Based on Disputed Facts," asserting that her preliminary objection based upon Rule 1028(a)(5) involved disputed issues of fact "for which a record must be developed" pursuant to Pa.R.C.P. 208.4(b)(1).[7] *See* Motion for Relief Based on Disputed Facts, 2/2/21, at 6 (citation omitted). The trial court denied the motion on February 4th, noting that both Appellees' and

---

[6] The record does not disclose when President Judge Seidle-Patton took over this matter.

[7] Rule 208.4 provides, in relevant part:

> If the moving party seeks relief based on disputed facts for which a record must be developed, the court, upon its own motion or the request of any party including the moving party, may enter an order . . . providing for the issuance of a rule to show cause.

Pa.R.C.P. 208.4(b)(1).

Appellant's preliminary objections would be addressed at the March 8th oral argument.

The trial court conducted oral argument as scheduled on March 8, 2021.[8] On March 23, 2021, the trial court enter an order dismissing Appellant's preliminary objection to Appellees' preliminary objection. The court found Appellees "both have the capacity and standing to file Preliminary Objections to [Appellant's] Second Amended Complaint." Order, 3/23/21. Appellant filed a motion for reconsideration on April 1st, which the trial court denied on April 23rd. The court stated it found Appellant's preliminary objection "to be illogical in so far as [Appellant was] asking [the] court to prohibit [Appellants'] from filing a preliminary objection to a complaint in which they have been named as Defendants." Order, 4/23/21, at 1-2 (unpaginated). At that time, the court did not yet rule upon Appellees' preliminary objection.

Meanwhile, on April 26, 2021, the trial court received a letter from Appellees' counsel — Robert C. Martin, Esq. — in which he expressed frustration that Appellant's counsel — William E. Hager, III, Esq. — did not serve him with two of Appellant's recent filings — her Motion for Relief Based on Disputed Facts and her Motion for Reconsideration of the court's March 23rd order. **See** Letter from Robert C. Martin, Esq. to President Judge Seidle-

---

[8] At the hearing, Attorney Heller appeared on behalf of East Brady Borough, but provided minimal argument. He stated: "The borough's concern is that residents of the borough who rely on . . . Railroad Street . . . for access are not deprived of that access." N.T., 3/8/21, at 13.

Patton, 4/26/21. Attorney Martin noted he was an out-of-county attorney, and, although he did not request any specific relief, he believed Attorney Hager's omissions "warrant[ed] an admonition[.]" *Id.*

Thereafter, on June 11, 2021, the trial court issued an opinion and order granting Appellees' preliminary objection and dismissing Appellant's second amended complaint with prejudice. Opinion and Order of Court, 6/11/21. The court opined that Appellant "has not provided any factual basis upon which she claims title to the south 33-foot-wide half of the abandoned right[-]of[-]way." Trial Ct. Op., 6/11/21, at 4 (unpaginated). That same day, the trial court issued a second order in response to Attorney Martin's April 26th letter. The order directed that Appellant's counsel "include in all Certificates of Service filed . . . in this case a Certificate of Mailing from the United States Postal Service indicating that the . . . document was mailed to Attorney Robert C. Martin at his proper address." Order, 6/11/21, at 1-2 (unpaginated).

On July 9, 2021, Appellant filed this timely appeal. She further complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

### B. Issues on Appeal

Appellant raises the following issues for our review:

1. The trial court erred in granting a petition to strike default judgment brought by petitioners who lack standing as non-adjacent property owners to the abandoned right-of-way and then by ordering Appellant to include these petitioners as Defendants in her amended complaint to quiet title.

2. The trial court erred by denying Appellant's preliminary objection to Appellees' preliminary objection to the second amended complaint without permitting discovery on disputed issues of fact, by determining that Appellees have standing and capacity to sue since they were included as Defendants and by denying Appellant's motion for reconsideration.

3. The trial court erred by sustaining Appellees' preliminary objection to the second amended complaint by finding . . . Appellees to be adjacent property owners to the abandoned right-of-way based on a prior court ruling that had made no such finding, by finding that Appellant has not pled a factual basis to support her cause of action despite the presence of such factual averments in the second amended complaint and for dismissing the second amended complaint with prejudice instead of permitting Appellant to cure any deficiencies through amendment.

4. The trial court erred by issuing an order requiring Attorney Hager to serve all pleadings via certificate of mailing based on an *ex parte* communication with Appellees' counsel to which Attorney Hager was not given an opportunity to respond, thereby demonstrating potential bias and prejudice against Appellant.

Appellant's Brief at 9 (some capitalization omitted).[9]

## C. Petition to Strike Default Judgment

Appellant's first issue concerns the trial court's order granting Appellees' petition to strike the default judgment entered in January of 2020. Our review is guided by the following:

---

[9] We note that these four issues consolidate several claims that Appellant listed separately in her Rule 1925(b) statement, where she purported to raise nine issues on appeal. *See* Appellant's Concise Statements or Errors Complained of on Appeal, 8/3/21, at 2-6. In fact, Appellant again separates these claims in the argument portion of her brief into eight distinct issues. *See* Appellant's Brief at 16-38. Nevertheless, we will address her claims — including any subclaims — as listed above.

> A petition to strike a default judgment . . . does not involve the discretion of the court. Instead, it operates as a demurrer to the record. A demurrer admits all well-pleaded facts for the purpose of testing conclusions of law drawn from those facts. Because a petition to strike operates as a demurrer, a court may only look at the facts of record at the time the judgment was entered to decide if the record supports the judgment. A petition to strike can only be granted if a fatal defect appears on the face of the record.

*Cintas Corp. v. Lee's Cleaning Servs., Inc.*, 700 A.2d 915, 918–19 (Pa. 1997) (citations omitted).

As noted *supra*, the trial court struck the default judgment based on several fatal defects on the face of the record. First, the court found Appellant failed to provide "any facts to support her claim that she has a right, title or interest in the land which is described in her [c]omplaint." Order, 9/25/20, at 2. Second, the court concluded that Appellant failed to attach to her motion for service of process by publication an affidavit "stating the investigation she made to determine the whereabouts of the adjoining owners and reasons service could not be made upon them pursuant to Rule 410." *Id.* Lastly, the court found the publication notice Appellant attached to her motion for default judgment[10] did "not describe the land and[, thus,] interested individuals were not put on notice what land [was] the subject of the action." *Id.* at 3.

_____

[10] The Affidavit of Publication Appellant attached to her motion for default judgment was, in fact, the December 12, 2019, 10-day notice of default. *See* Appellant's Motion for Default Judgment, 1/2/20, at Exhibit B. At the September 23, 2020, hearing, Attorney Hager argued that the original notice of publication of the civil action — filed on November 21, 2019 — described the abandoned right-of-way in more detail. *See* N.T., 9/23/20, at 15-16. The
*(Footnote Continued Next Page)*

On appeal, Appellant does not dispute any of these findings. Instead, she insists the trial court should not have considered Appellees' petition to strike without first determining whether they had standing to object to the default judgment. *See* Appellant's Brief at 16. Appellant maintains Appellees' (lack of) standing was a "threshold question" that she raised promptly, and that should have been resolved by the trial court. *Id.* at 18.

Moreover, Appellant asserts the court compounded this error by "forc[ing]" her "to file an Amended Complaint and to name Appellees as Defendants" based solely on their "claimed interests in the land . . . even if [she] believes they do not have valid claims." Appellant's Brief at 20 (record citation and quotation marks omitted). Appellant contends the trial court could have either "continued the hearing to permit the parties to develop the factual record" or struck the judgment and permitted Appellees to file a petition to intervene. *Id.* at 21. She insists the court's decision had far-reaching consequences because, later in the litigation, another judge dismissed her "lack of standing" preliminary objection to Appellees' preliminary objection based upon the fact that Appellees, as named defendants, had standing object to the complaint. *Id.*

Our review of the record — at the time Appellant sought default judgment — reveals ample support for the trial court's ruling. *See Cintas*

_____

trial court aptly responded, however, that the November 21st publication was not in the record. *See id.* at 16.

- 13 -

***Corp.***, 700 A.2d at 918–19. Appellant's November 2019 complaint averred she was an "adjacent land owner" to an abandoned railroad right-of-way in East Brady Borough. Appellant's Complaint at 3-4. Absent any further details, Appellant requested the court decree that unnamed defendants "be forever barred from asserting any right . . . in the land . . . inconsistent" with her interest. ***Id.*** at 4. These pleadings were insufficient to prove her right to quiet title to the parcel in question. Moreover, as the trial court aptly found, Appellant failed to attach the requisite affidavit to her motion seeking service of process by publication, ***see*** Pa.R.C.P. 430(a), and the published notice Appellant attached to her motion for default judgment did not describe the property in such detail as to put potential claimants on notice.[11] Thus, we agree there were fatal defects on the face of the record and, therefore, the trial court was compelled to strike the default judgment.

Furthermore, we conclude the trial court properly deferred consideration of Appellant's "standing" claim. We agree with Appellees' contention that the map attached to Appellant's November 2019 complaint showed a solid line extending from Appellees' properties, through "Railroad Street," to the

_____

[11] The Public Notice attached to the Motion for Default Judgment stated, in relevant part:

> TO: The unknown owner or owners of certain tract of land being described as certain vacant parcel of : land situate[d] in East Brady Borough, Clarion County, PA[.]

Appellant's Motion for Default Judgment, 1/2/20, at Exhibit B (some capitalization omitted).

southern border of the abandoned railroad right-of-way. *See* Appellees' Brief at 10; Appellant's Complaint at Exhibit 1. Appellant attempted to clarify the respective boundary lines in her answer to Appellees' petition to strike by attaching a "boundary survey" completed by a registered land surveyor, who claimed that upon his review of Appellees' deeds, their properties extended only to Railroad Street. *See* Appellant's Answer to Petition to Strike Default Judgment at Exhibit A. At the hearing on the petition to strike, Appellees disputed Appellant's allegation and asserted there were "issues" with the deeds "as to whether or not [Appellees] own to the edge of that right-of-way." N.T., 9/23/20, at 5. However, they stated: "That's a decision for the court to make." *Id.* We agree. At the time the court granted the petition to strike, the record consisted of a "map" that appeared to show Appellees' properties extending through "Railroad Street" to the railroad right-of-way. Although Appellant later provided a survey disputing this claim, the record was undeveloped. Thus, based upon Appellees' claimed interest, we conclude the trial court properly directed Appellant to name Appellees as defendants in her amended complaint.[12] Accordingly, no relief is warranted on her first issue.

_____

[12] Although Appellant now suggests the trial court could have continued the hearing to develop a factual record or directed Appellees to file a petition to intervene, we note that she did not suggest either of these options to the trial court. Rather, at the conclusion of the hearing, counsel for Appellant stated:

> [I]f you do wish to strike the judgment, then we'll go forward with our proof and see what [Appellees] have with their proof.

*(Footnote Continued Next Page)*

### D. Appellant's Preliminary Objection to Appellees' Preliminary Objection

Next, Appellant argues the trial court erred when it denied her preliminary objection to Appellees' preliminary objection. She contends the court improperly denied her objection to Appellees' standing without resolving the disputed factual issues through "interrogations, depositions, or an evidentiary hearing." Appellant's Brief at 25 (quotation marks omitted). Appellant insists that a preliminary objection based upon Rule 1028(a)(5), "cannot be resolved by referring to facts pled in the Complaint and require[s] additional evidence[;]" thus, the court should have granted her motion for relief based on disputed facts. *Id.* at 25-26. She also asserts the trial court compounded its mistake by denying her motion for reconsideration, and declaring her preliminary objection was "illogical in so far as [Appellant was] asking [the] court to prohibit Defendants from filing a preliminary objection to a complaint in which they have been named as Defendants." *Id.* at 27 (record citation and quotation marks omitted). Appellant emphasizes, however, the trial court "previously ordered" her to name Appellees as defendants "without resolving the threshold issue of their standing." *Id.*

---

We anticipate depositions, and then we'll provide, whether it be motion for summary judgment or motion for judgment of pleadings, but we'll put it back in front of you for your consideration.

N.T., 9/23/20, at 32.

It is well-settled that "[a] party has a right to file a preliminary objection raising any appropriate defenses or objections which that party might have to an adverse party's preliminary objection." **Ambrose v. Cross Creek Condominiums**, 602 A.2d 864, 866 (Pa. Super. 1992) (citations omitted). **See** Pa.R.C.P. 1028(a) (explaining "[p]reliminary objections may be filed by **any** party to **any** pleading") (emphasis added). Here, Appellant objected to Appellees' demurrer based upon Rule 1028(a)(5) — "lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action[.]" Pa.R.C.P. 1028(a)(5). She asserted the "lack of capacity to sue" encompasses an objection based upon lack of standing[13] and, because none of their properties adjoin the railroad right-of-way, Appellees have no standing to file a preliminary objection to her second amended complaint. **See** Appellant's Preliminary Objection to Appellees' Preliminary Objection of Appellant's Second Amended Complaint at 4. Appellant insists that, at the very least, the trial court should have "follow[ed] the required procedure for deciding a preliminary objection raising an issue of fact[,]" and conducted an evidentiary hearing on the standing issue. Appellant's Brief at 26.

Although a plaintiff has the right to file a preliminary objection to a defendant's preliminary objection, we agree with the trial court's

---

[13] "Because standing goes to a party's capacity to sue, a standing objection is properly raised by an objection under Rule 1028(a)(5)." **C.G. v. J.H.**, 172 A.3d 43, 54 (Pa. Super. 2017) (citations omitted), **aff'd**, 193 A.3d 891 (Pa. 2018).

characterization of Appellant's challenge in the present case as "illogical." Order, 4/23/21, at 2 (unpaginated). Here, Appellant argues that Appellees — whom she named as defendants in her quiet title action — have no standing to demurrer to her complaint. We recognize Appellant was directed by the trial court to name Appellees as defendants, and that she raised their lack of standing prior to the court's order. However, as discussed **supra**, we conclude the court's directive was proper since the "map" attached to Appellant's original complaint showed Appellees' properties extended to the railroad right-of-way. Thus, the issue of whether Appellees' properties adjoin the abandoned railroad right-of-way was a question of fact for the court to decide during the course of the litigation — not an issue of standing.[14] Accordingly, we conclude the trial court properly denied Appellant's preliminary objection to Appellees' preliminary objection.

E. <u>Sustaining of Preliminary Objection in Nature of Demurrer</u>

In her third claim, Appellant argues the trial court erred when it sustained Appellees' preliminary objection in the nature of a demurrer to her second amended complaint. Preliminarily, she maintains that, in its June 11,

---

[14] We recognize that in order to have standing to challenge an action, "a party must be aggrieved by the action[;]" that is, a party "must have a substantial, direct, immediate, and no remote interest in the subject-matter of the litigation." **Commonwealth v. J.H.**, 759 A.2d 1269, 1271 (Pa. 2000) (citations omitted). Here, Appellees all own property directly south of the abandoned railroad right-of-way. Although it is disputed whether their property lines adjoin the right-of-way, we agree they have a substantial, direct, and immediate interest in Appellant's quiet title action.

2021, opinion, the trial court mischaracterized Appellees as "adjacent property owners" based upon the earlier trial court's decision to strike the default judgment. Appellant's Brief at 29 (record citation and quotation marks omitted). Appellant argues: "Appellees' standing is the core issue at the heart of this case [and] the [prior] Trial Court never made a factual finding about it one way or the other." *Id.* at 30.

This claim is specious. Contrary to Appellant's assertion, President Judge Seidle-Patton was **not** under a misapprehension that Judge Arner "made a factual finding concerning the boundaries of Appellees' properties[.]" *See* Appellant's Brief at 30. Rather, a review of the transcript from the March 8, 2021, oral argument reveals the court understood Appellant's primary issue was that Appellees were not, in fact, adjacent landowners. *See* N.T., 3/8/21, at 6 (court commenting, "[i]sn't the ultimate issue in the case . . . whether [Appellees] own that property or whether [Appellant has] an ownership interest in the property?"). In our view, the court's reference to Appellees as "adjacent property owners" in its June 2021 opinion was not intended to reflect a judicial determination of the claim.

Appellant's primary objection to the court's ruling, however, is its determination that she "fail[ed] to plead any facts to support her claim of title to the south half of the right of way[.]" Appellant's Brief at 33 (quotation marks omitted). Indeed, she insists she owns two parcels that adjoin the right-of-way — one above the northern border, and the other at the western end. *See id.* With regard to Appellees' claim that she "has already obtained"

her 33-foot half of the railroad right-of-way, Appellant points out that she acquired the northern half of the right-of-way from her predecessors in title. *Id.* at 35 (quotation marks omitted). Furthermore, she asserts she is unaware of any law that: (1) prohibits her from using the northern half of the right-of-way her predecessors acquired to establish her entitlement to the southern half; or (2) prohibits one landowner from acquiring the entire abandoned parcel. *See id.* at 35 n.12. Rather, because she owns "**both** sides of the original 66 foot wide right-of-way[,]" Appellant argues she owns the 33-foot parcel in fee simple, and the trial court erred when it dismissed her second amended complaint with prejudice. *Id.* at 36.

Alternatively, Appellant maintains the trial court should have permitted her to cure any deficiencies in her pleading by filing an amended complaint, rather than dismissing the action with prejudice. *See* Appellant's Brief at 36. Without conceding that an amendment was necessary, Appellant asserts she could have "more specifically pled the chain-of-title and boundaries of all relevant properties and attached all relevant deeds[, as well as] added a declaratory judgment count . . . to obtain a legal determination of the parties' property boundaries and status of Railroad Street." *Id.* at 37. She states: "[I]t is not appropriate for the [t]rial [c]ourt to dismiss a complaint without considering the possibility that [the] complaint can be cured through amendment." *Id.*

Our scope and standard of review are well-established:

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. We review the trial court's decision for an error of law. As this presents a purely legal question, the standard of our review is *de novo*.

\* \* \*

Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.

In reviewing the propriety of the court's grant of preliminary objections in the nature of a demurrer, we apply the same standard as the trial court, which must resolve the objections solely on the basis of the pleadings[.] All material facts set forth in the pleading[s] and all inferences reasonably deducible therefrom must be admitted as true. [N]o . . . evidence outside the complaint may be adduced and the court may not address the merits of matters represented in the complaint.

*Catanzaro v. Pennell*, 238 A.3d 504, 507–08 (Pa. Super. 2020) (citations and quotation marks omitted).

In the present case, Appellant seeks to quiet title to a 33-foot abandoned railroad right-of-way. The burden of proof in a quiet title action is on the plaintiff — Appellant. *Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 362 (Pa. 2016). "In such an action, the plaintiff can recover only on the strength of . . . her own title and not upon the weakness of the defendant's title." *Montrenes v. Montrenes*, 513 A.2d 983, 984 (Pa. Super. 1986) (citations omitted).

Furthermore, the law is clear that "[w]hen a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land **on either side** of the right-of-way."

*Dellach*, 862 A.2d at 118 (emphasis added), *citing* **Newell Rod and Gun Club, Inc. v. Bauer**, 597 A.2d 667, 669 n.2 (Pa. Super. 1991). **See also Fleck v. Universal-Cyclops Steel Corp.**, 156 A.2d 832, 834 (Pa. 1959) (explaining "a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement[, and a] railroad is a highway within the meaning of this rule[;]" thus, abandonment by railroad of right-of-way over land, "would, in legal effect, merely extinguish this encumbrance upon the land which . . . would be held in fee by" adjoining landowners.) (citations omitted).

The trial court disposed of Appellant's claim as follows:

[Appellant] avers that she owns land north of the 66-foot-wide abandoned right-of-way and has acquired the 33-foot-wide north half of the right[-]of[-]way due to the abandonment. Nevertheless, while [Appellant] has amended her Complaint on two occasions now she has failed to provide a factual basis upon which she bases her claim to the 33-foot-wide southern half of the abandoned right[-]of[-]way. She has not averred that she is in actual possession of the 33-foot-wide south half of the right[-]of[-] way at issue in this case. Furthermore, she fails to plead any facts to support her claim of title to the south half of the right[-]of[-]way by any other means. Rather, [Appellant] relies solely on the averment that [Appellees] have no right to the property and, therefore, suggests that if they have no right, she must own the property. It is clear and free from doubt that [Appellant] will be unable to prove facts legally sufficient to establish the right to quiet title based on the averments of the Second Amended Complaint. As the Pennsylvania Supreme Court has held, the plaintiff in an action to quiet title must recover on the strength of her own title, rather than the weakness of the defendant's title. [Appellant] fails in this respect, as she has not provided any factual basis upon which she claims title to the south 33-foot-wide half of the abandoned right[-]of[-]way. Thus, [Appellees'] Preliminary Objection to [Appellant's] Second Amended Complaint

should be granted, the [Appellant's] Second Amended Complaint should be dismissed *with prejudice*.

Trial Ct. Op., 6/10/21, at 4 (unpaginated) (citations omitted).

We detect no error of law in the trial court's ruling. It merits emphasis that the original right-of-way granted to the railroad was **66 feet wide**. Appellant's predecessors in title, who owned the parcel of land adjoining the northern border of the 66-foot right-of-way, acquired the 33-foot **northern half** of the right-of-way sometime after the easement was abandoned by the railroad. Subsequently, Appellant acquired a small parcel of land abutting the western end of the right-of-way. Based upon her ownership of these two parcels, neither of which adjoin the 33-foot southern half of the original right-of-way, Appellant seeks to quiet title.

Appellant provides no support for her novel theory. Indeed, her argument focuses primarily on her claim that Appellees have no standing to challenge her quiet title action — a claim we have previously rejected. With regard to the "strength of . . . her own title[,]" Appellant provides minimal analysis. *See Montrenes*, 513 A.2d at 984. She asserts simply that there is no law **prohibiting** her from seeking title to the southern 33-foot parcel. *See* Appellant's Brief at 35 n.12. She queries: "If there is only one owner making a valid claim, why would that owner be limited to only half of the right-of-way? Is the remainder to sit vacant and abandoned forever?" *Id.* However, again, Appellant seeks to obtain title based on the weakness of other potential landowners' titles and not the strength of her own. *See Montrenes*, 513 A.2d at 984. She offers no support for her assertion that her ownership of property

adjacent to the **northern half** of the right-of-way provides a basis for her to quiet title to the **southern half** of the right-of-way.

Further, Appellant's reliance on her ownership of the parcel adjoining the **western end** of the right-of-way similarly provides no basis for relief. Rather, we agree with Appellees' assertion that "the ***Dellach*** rule . . . splits an abandoned railroad right-of-way along its longitudinal centerline." Appellees' Brief at 3 n. 3. The ***Dellach*** Court held that an abandoned railroad right-of-way "is owned in fee simple by the owner or owners of the land **on either side** of the right-of-way." ***Dellach***, 862 A.2d at 118. ***See also Fleck***, 156 A.2d at 834 (explaining that if a railroad acquired a mere easement in "strip of land" as opposed to "a base fee," upon extinguishment of the "encumbrance," the land would revert to party who acquired title to "**both sides** of the aforesaid right-of-way") (emphasis added). The ***Dellach*** Court did not state that the parcel would be split between the owners **on all sides** of the right-of-way. Appellees' interpretation is logical since a railroad right-of way affects properties lying on either side of the railroad tracks.

Finally, with regard to Appellant's claim that the trial court should have permitted her to amend the complaint, we agree with Appellees that (1) Appellant never requested leave to amend her second amended complaint,[15]

---

[15] ***See*** Pa.R.C.P. 1033(a) ("A party, **either by filed consent of the adverse party or by leave of court**, may at any time . . . amend the pleading.) (emphasis added); ***Philadelphia Factors, Inc. v. Working Data Grp., Inc.***, 849 A.2d 1261, 1264 (Pa. Super. 2004) (stating "there is no obligation to

*(Footnote Continued Next Page)*

and (2) "none of [the] changes [Appellant suggests in her brief] would cure the legal insufficiency of her claim." Appellees' Brief at 16-17. As our Supreme Court has explained, a trial court "is not required to permit amendment of a pleading if a party is unable to state a claim on which relief could be granted. *Bayada Nurses, Inc. v. Com., Dep't of Lab. & Indus.*, 8 A.3d 866, 884 (Pa. 2010). Here, although Appellant claims she "could have" amended her complaint to "more specifically ple[a]d" Appellees' property boundaries and determine the status of Railroad Steet,[16] neither of these amendments would have cured the underlying problem with Appellant's claim — that she cannot prove her entitlement to the southern 33-foot half of the right-of-way. Thus, she is entitled to no relief.

F. Order Directing Service of Appellees' Counsel by Certified Mail

In her fourth and final claim, Appellant contends the trial court erred by required her counsel — Attorney Hager — "to serve all future pleadings" *via* certified mail to Appellees' counsel, based on an *ex parte* communication from Appellees' counsel. Appellant's Brief at 38. Appellant maintains that the order was issued "without hearing or notice," and "shows possible bias" against her because it was filed the same day as the order dismissing her second amended complaint with prejudice. *Id.*

---

allow an amendment of pleadings after" the trial court sustains preliminary objections in the nature of a demurrer).

[16] *See* Appellant's Brief at 37.

Black's Law Dictionary defines an *ex parte* communication as "[a] communication between counsel or a party and the court when opposing counsel or party is not present[,]" and notes that "[s]uch communications are ordinarily prohibited."  Black's Law Dictionary, "Communication" (11th ed. 2019).   Here, however, the trial court explained that, when it received Attorney Martin's letter, it did not believe the communication was *ex parte*:

> On the contrary, Attorney Martin indicates at the bottom of the letter that a copy was also mailed to Attorney Hager.  Not until he filed his [Rule 1925(b) Statement] did Attorney Hager ever inform the court in any manner that he felt Attorney Martin's letter was *ex parte* or that he wanted an opportunity to respond to [the trial] court's June [11], 2021 Order[.]  He did not previously ask the court to reconsider its directive or indicate to the court that he felt it somehow created "bias or prejudice" against him and in favor of [Appellees].

Trial Ct. Op., 10/6/21, at 2-3 (unpaginated).  Indeed, Attorney Martin's letter, which is included in the certified record, indicates that a copy was served on Attorney Hager.  **See** Letter from Robert C. Martin, Esq. to President Judge Seidle-Patton.  Thus, the court did not believe it was responding to an *ex parte* communication from Attorney Martin.

Nevertheless, the trial court also explicitly stated that Attorney Martin's letter, and its response thereto, "in no way affected the outcome of the case." Trial Ct. Op., 10/6/21, at 3.  The court opined:

> This court has clearly outlined its reasons, based soundly in applicable law, for granting [Appellees'] preliminary objection and dismissing the action.  The court's decision had nothing to do with the ancillary struggles the attorneys were apparently having with pleadings being mailed and never received by the other party.

- 26 -

There was no bias, prejudice or impropriety created by Attorney Martin's April 22, 2021 letter to the court.

*Id.*

Appellant's claim of "possible bias" is nothing more than mere speculation based upon the fact that the court issued that order on the same day as the order dismissing her complaint with prejudice. She has not established the court erred or abused its discretion in directing her counsel to serve opposing counsel by certified mail, nor can she demonstrate the court's order was evidence of bias. Thus, her final claim fails.

## G. Conclusion

Upon our review, we conclude Appellant has failed to establish the trial court erred in any of the rulings she challenges on appeal. Consequently, we affirm the order entered June 11, 2021, sustaining Appellees' preliminary objection and dismissing Appellant's second amended complaint with prejudice.

Order affirmed. Appellees' Application to Strike All or Part of Appellant's Reply Brief, and Appellant's Application for Relief Pursuant to Pa.R.A.P. 123 — Opposition to Appellee's Application to Strike All or Parts of Appellant's Reply Brief are hereby DENIED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/19/2022